EXHIBIT
tabbies
A

# WESTERN UNION NORTH AMERICA AGENCY AGREEMENT
(Western Union, Orlandi Valuta and Vigo-Branded Services)

This Agency Agreement (this "Agreement") is entered into by Western Union Financial Services, Inc., a Colorado corporation ("Western Union" or "WUNA") and the undersigned Agent.

Agent and WUNA agree as follows:

1 Definitions. Capitalized terms used herein shall have the meanings given to such terms as set forth in this Section 1 or as defined elsewhere in this Agreement or any Attachment hereto.

1.1 "Service Requirements" include the Agency Reference Guide, Bank Secrecy Act Compliance Manual, operations manuals, user guides, customer forms, receipts, record retention schedules, rate schedules and applicable tariffs, policies, rules and regulations, all as may be amended from time to time by WUNA.

1.2 "Services" means the Money Transfer Services, the Stored Value Services, the offering for sale to the public Money Orders, and/or the Convenience Pay Services, as applicable.

1.3 "Trust Account" means a bank account maintained by Agent for the purpose of depositing MT Trust Funds (as defined in Part A(s)), MO Trust Funds (as defined in Part B) and/or the unremitted Consumer Payments and Consumer Fees (each as defined in Part C), as applicable. The Trust Account shall be maintained at a federally insured financial institution designated by Agent and shall meet the requirements specified by WUNA from time to time. Agent shall, and shall direct its bank to, provide to WUNA all Trust Account activity and balance records and information as may be requested by WUNA from time to time. Agent shall provide WUNA with 14 days' advance written notice prior to changing the Trust Account in any manner.

2 Services. WUNA appoints Agent as its delegate, authorized to offer the Services indicated on the signature page hereof in accordance with the terms and conditions of this Agreement and Agent shall comply with the terms, conditions and procedures set forth in the applicable Description of Service (attached as Parts A, B and/or C) and with the Service Requirements. Current copies of the Service Requirements have been provided to Agent by WUNA and are available upon request from WUNA.

3 Locations.

3.1 Hours. Agent shall offer the Services at each of Agent's locations and during the hours specified by Agent on Attachment I.

3.2 Change of Locations. Subject to the provisions of Section 8A of Part A, Section 7B of Part B and Section 8C of Part C, Agent shall not close a location at which the Services are being offered without giving WUNA 90 days prior notice. Agent shall not offer the Services at a location that is not listed on Attachment I without giving WUNA 90 days prior notice and without WUNA's prior approval.

3.3 Additional Locations. Agent agrees that all additional locations of Agent, whether newly opened or acquired after the Effective Date, shall offer the Services pursuant to the terms of this Agreement as soon as reasonably possible after such opening or acquisition. Inclusion of additional locations under this Agreement shall be subject to WUNA's prior approval. Agent shall not be required to offer the Services at Additional Locations that are subject to binding and pre-existing contractual obligations which bar Agent from providing the Services; provided, however, Agent shall terminate, cancel or allow to expire any such pre-existing contractual obligations, at the earliest possible time consistent with the provisions thereof, and shall subsequently provide the Services at such Additional Locations.

4 Advertising; Trademarks.

4.1 Advertising. Agent agrees to advertise and promote the Services so as to develop consumer interest and confidence in the Services and to enhance the goodwill associated therewith and with WUNA's Trademarks. Agent shall (a) participate in WUNA's promotional programs, (b) make prominent use of signs, brochures, displays, decals and other promotional materials provided by WUNA, and (c) comply with WUNA's merchandising standards, as set forth in Part A, Part B, Part C, and/or the Service Requirements, as applicable.

4.2 Approval. Agent may promote any of the Services in its own advertising or promotional materials in any form of media, including radio, television, print or the Internet, subject to the prior written approval of WUNA. Requests for such approval shall be forwarded to: WUNA, Attention: Trademark Administrator, 12500 East Belford Avenue, Englewood, Colorado 80112. WUNA may periodically inspect Agent's advertising and promotional materials relating to the Services for compliance with this Agreement. If WUNA reasonably considers Agent's promotion of the Services to be improper, misleading or otherwise contrary to Agent's obligations under this Agreement, Agent shall, upon WUNA's request, promptly modify or replace the same, subject to WUNA's prior written approval, or discontinue such promotion.

4.3 Trademarks. Agent is granted a nonexclusive, royalty-free right to use the trade names, trademarks, trade dress, symbols, logos and copyrighted material (collectively "Trademarks") of WUNA specified by WUNA from time to time, and WUNA is granted the nonexclusive, royalty-free right to use Agent's Trademarks, each for the limited purpose of advertising and promoting the Services, and subject in each case to the prior written approval of the party whose

Trademarks are being used. Each party agrees that use of any other party's Trademarks shall not confer any proprietary right thereto. Each party shall cease all use of the other party's Trademarks immediately upon termination or suspension of this Agreement.

4.4 Press Releases. No party may issue any press release or other public notice relating to the subject matter of this Agreement without the prior written approval of the other party.

5 Confidentiality.

5.1 Agent acknowledges that all records and information regarding consumers that Agent may collect relating to the Services (including but not limited to, information provided by consumers on "Send" and "Receive" forms and on Biller Statements) ("Consumer Information") is the exclusive property of WUNA. Agent agrees that it shall only use the Consumer Information in its performance of the Services, and that Agent shall not use, sell, rent, exchange or otherwise disclose the Consumer Information to any party other than WUNA for any purpose whatsoever without the prior written consent of WUNA, except as may be required by Applicable Law. All Consumer Information shall be provided to WUNA upon its request. If WUNA shall consent to any collection, use or transfer of Consumer Information, then Agent warrants to WUNA that such collection, use and transfer shall be accomplished in full compliance with all applicable laws and regulations governing data protection and consumer privacy, and with the Service Requirements. In the event that Agent receives a request or demand to disclose any Consumer Information outside of the ordinary course of reporting Agent shall immediately notify WUNA and, if requested by WUNA, will fully cooperate with any effort to obtain a protective order or any other protective measures. Agent acknowledges that the Service Requirements set forth retention and destruction schedules and requirements for certain forms and/or documents that contain Consumer Information and other confidential information. Agent shall comply with such obligations and shall promptly inform WUNA in the event of any non-compliance with such requirements.

5.2 Agent agrees that neither Agent nor its officers, principals or employees shall use, sell, rent, exchange or otherwise disclose to any person or entity, other than WUNA, and other than for purposes of Agent's performance under this Agreement, or as may be required by Applicable Law: (a) the Service Requirements; (b) security identifications, "bingo card" information, account numbers, agent numbers, and WUNA's other security measures and/or procedures; (c) sales or transaction volumes, revenues, earnings, commission rates, terms, conditions or payments hereunder; or (d) any other confidential information with respect to WUNA, the Services, the MT Equipment, the MO Equipment, the C-Pay Equipment, Billers, this Agreement, or the relationship between the parties.

5.3 Agent shall cooperate fully with WUNA in implementing all procedures mandated by law in order to protect consumer privacy and/or consumer data, and any such commercially reasonable policies and/or procedures implemented by WUNA.

5.4 WUNA agrees that it shall not sell, rent, exchange or otherwise disclose any financial information of Agent to any party other than as may be required by law or as may be voluntarily reported to a governmental or regulatory agency by WUNA, pursuant to its internal compliance policies or in connection with money transmission, sales of checks or anti-money laundering laws or regulations.

6 Compliance with Laws.

6.1 Compliance with Laws. Agent shall comply (and shall cause its officers, principals and employees to comply) with all federal, state and local laws and regulations applicable to Agent's business and to Agent's provision of the Services, as may be amended from time to time (collectively "Applicable Law"), including but not limited to: (a) state licensing laws; (b) the Bank Secrecy Act (31 U.S.C. § 5311 et. seq., and its implementing regulations, 31 C.F.R. Part 1022); (c) the IRS's cash reporting requirements (26 U.S.C. § 6050I) and related regulations; (d) state currency reporting requirements; (e) federal and state anti-money laundering laws, including all rules and regulations promulgated thereunder (e.g., 18 U.S.C. §§ 1956 and 1957); (f) all applicable state money transfer or sale of checks laws and regulations (including those laws and regulations referred to or set out in Schedule A, if any); (g) all applicable federal and state privacy laws and regulations; (h) the USA PATRIOT Act; (I) the Dodd-Frank Wall Street Reform and Consumer Protection Act (Section 1073 and related regulations); (j) the Consumer Financial Protection Bureau Remittance Rules (77 FR §§ 6194, 40459 and 50243) and related regulations; and (k) all applicable federal and state laws regulating access for the disabled, including but not limited to the Americans with Disabilities Act.

6.2 Nondiscrimination. As a government contractor within the meaning of Executive Order 11246, WUNA requires its delegates to set forth their

® Document Integrity Verified          EchoSign Transaction Number: XCP6SMWZ4GT33XZ

DOCUMENT 2

obligations pertaining to nondiscrimination in employment and nonsegregation of facilities. Agent hereby certifies that Agent will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or age.

7 Representations and Warranties.

7.1 Agent and its Employees. With regard to itself, and on behalf of its officers, principals and all other Agent employees and/or representatives with managerial oversight and/or responsibility for Agent locations offering the Services, Agent represents and warrants that: (a) all information disclosed to WUNA in connection with the application process to become a WUNA Agent (the "Agency Agreement Application") is true, accurate, and complete; (b) none of them has been convicted of any felony that has not been disclosed to WUNA, in writing, prior to the Effective Date; (c) none of them has been charged with or convicted of (or pleaded guilty or no contest to) any criminal act constituting, involving or relating to: fraud; embezzlement; theft; money laundering; the financing of terrorism or terrorist organizations; the importation of undocumented aliens; receipt of stolen property; or the possession, use, manufacture or distribution of any narcotic or other controlled substance. This representation and warranty shall be deemed an ongoing representation and warranty from Agent. Agent shall provide notice to WUNA within forty-eight hours after any of the foregoing representations or warranties shall cease to be true at any time during the term of this Agreement.

7.2 Subagents. Agent represents and warrants that it shall not appoint any subagents hereunder and shall not offer the Services at or through any entity not a party to this Agreement or at or through any location not expressly included as a location under this Agreement.

7.3 Ownership. Agent represents and warrants that it has disclosed to WUNA all ownership or other interests that Agent, its affiliates, and their respective officers, directors, and principals, as applicable, may have in any other WUNA delegate.

7.4 Authority. Agent represents and warrants that: (a) Agent has full power and authority to enter into this Agreement; (b) the execution, delivery and performance by Agent of this Agreement will not constitute a default (or an event which, with notice or lapse of time or both, would cause a default) under any contract or agreement to which Agent or any of its affiliates are a party, or require consent or approval from any other party to any such contract; and (c) this Agreement constitutes a legal, valid and binding obligation of Agent, enforceable against Agent in accordance with the terms and conditions of this Agreement.

7.5 No Warranty. WUNA MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO ANY EQUIPMENT, SOFTWARE AND OTHER ITEMS PROVIDED UNDER THIS AGREEMENT, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY, AND ANY WARRANTY AGAINST INFRINGEMENT. ANY EQUIPMENT, SOFTWARE OR OTHER ITEMS PROVIDED UNDER THIS AGREEMENT BY WUNA ARE PROVIDED TO AGENT "AS IS" WITH ALL FAULTS.

8. Term and Termination.

8.1 Term. This Agreement shall be effective on the Effective Date and continue in force for a period of five years (the "Initial Term"), unless otherwise terminated as provided herein. This Agreement shall automatically renew for an additional term of five years (the "Renewal Term"), unless either party provides the other party with at least 12, but not more than 24, months prior written notice of termination. Upon expiration of the Initial Term and the Renewal Term, this Agreement shall continue in effect, subject to the right of either party to terminate this Agreement at any time thereafter by giving the other party at least 12 months prior written notice of termination.

8.2 Suspension and Termination. WUNA may take, or demand that Agent take (as applicable) any one or more, of the Remedial Actions (as defined below) if WUNA, acting in its sole discretion, determines: (i) that a material adverse change in the financial condition or business prospects of Agent, a principal of Agent or any guarantor of this Agreement, has occurred, or may occur, in the following twelve (12) months; (ii) that Agent's continued performance under this Agreement or may become, impaired; or (iii) Agent breaches any of the terms, conditions, representations or warranties set forth in this Agreement (including the provision of false or misleading information) or any other agreement between WUNA, or an affiliate of WUNA, and Agent or a principal of Agent.

8.3 Remedial Action. As used in this Agreement a "Remedial Action" is defined as: (a) Agent's immediate wire transfer of the MT Trust Funds, MO Trust Funds and/or other amounts due and owing to WUNA; (b) the immediate suspension, or termination, of Agent's ability to provide one or more of the Services at one or more Agent location; (c) immediate termination of Part A, Part B, Part C, or this Agreement; (d) exercise any legal and/or equitable remedies available to WUNA, for which WUNA shall be entitled to reimbursement of reasonable attorneys' fees and expenses; (e) satisfaction of any amount owed by Agent to WUNA by offset against any funds that may be due or owing by WUNA (including its affiliates) to Agent; (f) securing, for the benefit of WUNA, a bond, irrevocable letter of credit or other similar instrument acceptable to WUNA; (g) assessing a late charge on the amounts due to WUNA by Agent, in the amount of the greater of: (i) $25.00 per day, or (ii) interest on the entire amount owed to WUNA at the rate of two percentage points (2%) above the prime rate of interest published in the Wall

Street Journal (or any other financial publication designated by WUNA) in effect at that time, or the maximum interest rate allowed under applicable law, or (h) assessing a charge of $50.00 for each failure by Agent to make payment due to insufficient funds.

8.4 Violation of Law. Notwithstanding any other provision of this Agreement to the contrary, WUNA may immediately terminate this Agreement, or any of Parts A, B, or C, with regard to any or all Agent locations, if WUNA, in its sole discretion, determines that compliance with this Agreement, or any Part hereof, would cause WUNA or any of its affiliates to violate or potentially violate any local, state or federal law or regulation or any court order.

9 Indemnification; Limitation of Liability.

9.1 Indemnification by Agent. Agent shall indemnify and hold WUNA, its affiliates, and their respective officers, directors, agents and employees, harmless from and against any claims, losses, causes of action, damages, liabilities or expenses (including reasonable attorneys' fees and expenses) arising out of or resulting from: (a) any violation of this Agreement; (b) Agent's failure to comply with Applicable Law; (c) any failure to adhere to the Service Requirements (including any payments of Money Transfers to other than the intended recipients, in excess of the authorized amount, or resulting from any failure to mark the transaction as paid-out in the will call file); (d) any negligence, recklessness or willful misconduct of Agent, its officers, directors, agents or employees, as applicable; (e) the loss, misuse, theft, burglary, forgery, robbery or other crime, destruction, disappearance and all other causes of loss with respect to the MT Trust Funds, the MT Checks, the MO Trust Funds, or the Money Orders, including the receipt of counterfeit currency or checks; (f) WUNA's action to stop payment on a Money Order upon Agent's request; or (g) any claim of premises liability involving any of Agent's locations. The indemnification obligations set forth herein shall survive the termination of this Agreement.

9.2 Indemnification by WUNA. WUNA shall indemnify and hold Agent, its affiliates, and their respective officers, directors, agents, and employees, harmless from and against any third party claims, losses, causes of action, damages, liabilities or expenses (including reasonable attorneys' fees and expenses) arising out of or resulting from any mishandling, delay, non-delivery or other errors or omissions concerning the Money Transfer Services caused by WUNA prior to transmission to Agent or after acceptance from Agent and not attributable to the acts or omissions of Agent, its officers, principals, or employees.

9.3 Limitation of Liability. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, IN NO EVENT SHALL THE CUMULATIVE AGGREGATE LIABILITY OF WUNA UNDER THIS AGREEMENT EXCEED $100,000.00 IN DIRECT ACTUAL DAMAGES SUFFERED BY AGENT. IN NO EVENT SHALL WUNA, OR ITS AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS BE LIABLE UNDER ANY LEGAL OR EQUITABLE THEORY (INCLUDING, BUT NOT LIMITED TO TORT, CONTRACT, STRICT LIABILITY, AND WARRANTY) FOR PUNITIVE, EXEMPLARY, SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SIMILAR DAMAGES, INCLUDING LOST PROFITS, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES AND REGARDLESS OF WHETHER OR NOT WUNA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10 Financial Statements; Audit and Inspection.

10.1 Financial Statements. Upon request by WUNA from time to time, Agent shall promptly provide to WUNA its current annual or interim financial statements, certified by Agent's independent auditors, if available. Agent grants to WUNA, as well as to prior employers, trade references, Dun and Bradstreet, and banks, consumer credit services, consumer reporting agencies and to state and federal government representatives without regard to whether they are listed herein, permission and authorization to verify, receive, exchange and obtain business and/or personal credit and other information, including without limitation, criminal background checks, as part of WUNA's ongoing evaluation of Agent.

10.2 Records. Agent shall maintain records with respect to the Services for such period as may be required by law or WUNA. Such records shall include copies of all transaction forms, receipts and all other records Agent may compile in connection with its performance of the Services. Agent shall provide copies of any such records to WUNA upon WUNA's request.

10.3 Audit. During the term of this Agreement, and for a period of one year thereafter, WUNA shall have the right at any time to audit and inspect Agent's books and records related to Agent's performance of the Services and Agent's compliance with this Agreement, the Service Requirements, and Applicable Law. Consumer Information is the property of WUNA and is subject to audit, review and collection by WUNA. Upon notice from WUNA of any deficiency, Agent shall correct such deficiency within five business days. Agent shall pay WUNA the reasonable costs related to such audit.

11 Insurance. Agent represents and warrants that Agent has sufficient assets or insurance to cover losses or liabilities arising from claims for workers' compensation, bodily injury, property damage, theft, employee dishonesty,

DOCUMENT 2

© Document Integrity Verified

EchoSign Transaction Number: XDBGSMWZ4GT33XZ

Case 19-80058-CRJ    Doc 1-1    Filed 07/23/19    Entered 07/23/19 14:32:33    Desc
Exhibit A and B    Page 2 of 15

forgery, robbery, burglary, misplacement and similar occurrences, including loss, theft, damage, destruction or the like of the MT Equipment. Agent's obligation to maintain insurance hereunder shall not relieve Agent of any of its other obligations hereunder, including its indemnity obligations in Section 9.1.

**12 Assignment.**

12.1 Any transfer or assignment of this Agreement or any rights hereunder by Agent, in whole or in part, by operation of law or otherwise, without WUNA's prior written consent, is prohibited, constitutes a material breach of the Agreement and in WUNA's sole discretion shall be voidable. In the event of such transfer or assignment, the party to whom the Agreement was transferred or assigned shall be bound to the terms and conditions of this Agreement to the same extent as if WUNA and such assignee or transferee, as the case may be, entered into an agreement identical to this Agreement. Furthermore, Agent shall indemnify and hold WUNA harmless from all liabilities, expenses, costs, fees and fines arising from, or in connection with, such transferee's or assignee's offering of the Services. For purposes of this Agreement, an assignment or transfer shall include, among other things: (a) a Change of Control of Agent or any person or entity that directly controls the Agent, or (b) the transfer or sale of any substantial part (10% or more in value) of the total assets of Agent. "Change of Control" means that: (i) the persons directly or indirectly owning the voting stock or interests shall cease to own, directly or indirectly, more than 10% of all such voting stock or interests (on a fully-diluted basis); and/or (ii) the persons directly or indirectly owning the voting stock or interests shall otherwise cease to have such ability, directly or indirectly, to elect the majority of the board of directors or other governing members. Under no circumstances shall any assignment or transfer of this Agreement by Agent release Agent from its obligations hereunder unless WUNA consents to such a release in writing.

12.2 Agent shall provide WUNA with written notice of Agent's intent to liquidate, substantially change the basic nature of its business, or transfer or sell any substantial part (10% or more in value) of its total assets. Agent shall also notify WUNA of any judgment, writ, warrant of attachment, execution or levy against any substantial part (10% or more in value) of Agent's total assets not later than three days after Agent obtains knowledge of any such judgment, writ, warrant of attachment, execution or levy.

12.3 In no event shall Agent sell, assign or otherwise transfer all or a significant part of the assets used in connection with Agent's business operated at all, or substantially all, of the locations covered by this Agreement, unless: (a) WUNA gives its prior written consent to such sale, assignment or transfer and (b) the purchaser, assignee or transferee thereof assumes this Agreement and all of the provisions and obligations of the Agent hereunder. If Agent effects any such sale, assignment or transfer, Agent shall be responsible for all of the termination responsibilities set forth in Section 8A of Part A, Section 7B of Part B, and/or Section 8C of Part C, as applicable; Agent shall be responsible for the liquidated damages set forth in such Sections, unless: (a) the transferee thereof assumes this Agreement and all of the provisions and obligations of the Agent hereunder, and (b) WUNA consents to the same in writing. In no event shall Agent be relieved of its liability to WUNA or any of its other obligations arising hereunder without WUNA's prior written consent.

12.4 WUNA may assign or transfer this Agreement and its rights hereunder and may delegate its duties hereunder, in whole or in part, to any third party, whether in connection with a change in ownership or otherwise, without the consent of Agent.

12.5 Except as provided in the following sentence, this Agreement will inure to the benefit of WUNA, its successors and assigns. No assignee for the benefit of creditors, custodian, receiver, trustee in bankruptcy, debtor in possessions, sheriff, constable or any other officer of the court, or other person charged with taking custody of Agent's assets or business, shall have any right to continue or to assume or to assign this Agreement.

13 Notices. All notices hereunder shall be in writing and shall be deemed given when personally delivered, or when sent by facsimile transmission with receipt confirmed, one day after being sent by a reputable overnight courier, or three business days after being mailed by certified mail, return receipt requested, in each case directed: (a) if to Agent, to its address as shown on the face of its Application, to the attention of the representative or party signing this Agreement; (b) if to WUNA, to Western Union, 12500 East Belford Avenue, Englewood, Colorado 80112, Attention: President, with a copy to the same address, Attention: General Counsel; or (c) to such other address for each party as is specified by such party in a notice given to the other party.

14 Other Provisions.

14.1 Waiver of Trial by Jury. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING A CLAIM ARISING OUT OF, OR RELATING TO, THIS AGREEMENT.

14.2 Waiver of Service of Process. AGENT HEREBY IRREVOCABLY WAIVES PERSONAL SERVICE OF PROCESS AND CONSENTS THAT SERVICE OF PROCESS UPON IT MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, AT THE ADDRESS PROVIDED PURSUANT TO SECTION 13.

14.3 Independent Contractors. The parties agree that they are acting hereunder as independent contractors and that nothing in this Agreement shall be construed to constitute either party as a partner, employee or agent of the other (except for the limited purpose of offering the Services as defined herein), and no employee or agent of either party shall be deemed to be the employee or agent of the other. Neither party shall have the authority to make any agreement or commitment, nor incur any liability on behalf of the other, nor be liable for any acts or omissions of the other, except as specifically provided herein.

14.4 This Agreement, including, all Parts, Schedules, Exhibits and Attachments hereto, the Agency Agreement Application, the Service Requirements, and all documents incorporated by reference herein, constitutes the entire and sole agreement between the parties with respect to the subject matter herein. This Agreement supersedes all prior understandings, arrangements or agreements, whether verbal or written, between the parties hereto with respect to the subject matter of this Agreement. Provisions of this Agreement that concern or relate to obligations and duties to be performed after the termination of this Agreement shall survive termination of this Agreement to the extent reasonably necessary to effectuate the intent and purpose of such provisions. Except as provided hereinabove, no modification, renewal, extension or waiver of any of the provisions of this Agreement shall be binding upon the parties unless made in writing and signed by the parties. Emails, including emails that bear an electronic "signature block" identifying the sender, shall not constitute signed writings for purposes of this Agreement. No failure of either party to require performance by the other of any provision hereof shall be construed to be a modification of this Agreement or a waiver of any succeeding breach. If any provision of this Agreement is determined to be invalid by a court of competent jurisdiction, such provision shall be deemed void and the remainder of this Agreement shall continue in full force and effect. Except as expressly set forth herein, nothing contained in this Agreement is intended to confer upon any person not a party hereto any rights, benefits or remedies of any kind or character whatsoever, and no such person shall be deemed a third-party beneficiary under this Agreement. In the event this Agreement references more than one person, corporation, partnership or entity as Agent, then it is expressly agreed that the liability of such persons or entities hereunder shall be both joint and several. This Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York (without regard to any provisions concerning choice of law or conflict of laws which might result in the application of the law of another jurisdiction). In the event this Agreement is translated into a language other than English, it is done solely for convenience purposes, with only the signed English language version of this Agreement being valid and binding upon the parties.

15. State Specific Requirements. This Section 15 applies to Agent with respect to its locations, if any, in the states listed below:

ARKANSAS, CALIFORNIA, HAWAII, IDAHO, INDIANA, KENTUCKY, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEBRASKA, NEW YORK, NORTH CAROLINA, NORTH DAKOTA, OREGON, TENNESSEE, TEXAS, VIRGINIA, WYOMING

Agent is under a duty to act only as authorized under this Agreement. Agent and WUNA are subject to supervision, regulation and disciplinary action, including but not limited to termination of the Agreement, by or at the direction of the Director (as defined below). Agent hereby consents to the Director's inspection of the books and records of Agent, with or without prior written notice to WUNA or Agent. As used in this Section 15, "Director" means the following for each of the states listed below:

Arkansas – Arkansas Securities Commissioner
California – Commissioner of Financial Institutions
Idaho – Director of the Idaho Department of Finance
Hawaii – Hawaii Commissioner of Financial Institutions
Indiana – Director of Indiana Department of Financial Institutions
Kentucky – Executive Director of the Kentucky Office of Financial Institutions
Maine – Director of Office of Consumer Credit Regulation within the Department of Professional and Financial Regulation
Maryland – Bank Commissioner of the Department of Licensing and Regulation
Michigan – Commissioner of the Office of Financial and Insurance Services
Minnesota – Commissioner of Commerce
Nebraska – Director of Banking and Finance
New York – Superintendent of Banking of the State of New York
North Carolina – Commissioner of Banks of the State of North Carolina
North Dakota – Commissioner of the Department of Financial Institutions
Oregon – Director of the Department of Consumer and Business Services
Tennessee – Tennessee Commissioner of Financial Institutions
Texas – Texas Commissioner of Banking
Virginia – Virginia State Corporation Commissioner
Wyoming – State Banking Commissioner

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

Document Integrity Verified    EchoSign Transaction Number: XDB0SMWZ4GT33XZ

Case 19-80058-CRJ    Doc 1-1    Filed 07/23/19    Entered 07/23/19 14:32:33    Desc
Exhibit A and B    Page 3 of 15

ARKANSAS, CALIFORNIA, DISTRICT OF COLUMBIA, IDAHO, ILLINOIS, INDIANA, IOWA, KENTUCKY, MARYLAND, MICHIGAN, MINNESOTA, NEW JERSEY, VERMONT, VIRGINIA, WASHINGTON, TEXAS

Agent will perform all Services in compliance with the Act (as defined below) and any rules, regulations or orders issued thereunder, as amended from time to time. As used in this Section 15, "the Act" means the following for each of the states listed below:

Alaska – Alaska Uniform Money Services Act, Chapter 55 of Title 6 of the Alaska Statutes

Arkansas – Arkansas Uniform Money Services Act, Arkansas Code, Title 23, Chapter 55

California – Money Transmission Act of the California Financial Code and of any regulations or orders issued thereunder

District of Columbia – Money Transmissions Law, Chapter 10 of Title 26 of the District of Columbia Code

Idaho – Chapter 29 of Title 26 of the Idaho Code

Illinois – the laws of the State of Illinois and the United States, including without limitation, Illinois Transmitters of Money Act, 205 Illinois Compiled Statutes Section 657

Indiana – Indiana Code Section 28-8-4-1 through Section 28-8-4-53

Iowa – Iowa Uniform Money Services Act, Chapter 533C of the Iowa Code

Kentucky – Kentucky Revised Statutes Chapter 286

Maryland – Maryland Money Transmission Act, Md. Code Ann., Fin. Inst. Sections 12-401 to 12-431

Michigan – Michigan Money Transmission Services Act, Act 250 of 2006, Michigan Compiled Laws Section 487, specifically subsections 1033 and 1034, and any rules, regulations or orders issued thereunder

Minnesota – Minnesota Statutes Annotated Chapter 53B.21

New Jersey – New Jersey Money Transmitters Act, New Jersey Statutes, Title 17, Chapter 15C

Vermont – Chapter 79, Title 8 of the Vermont Statutes

Virginia – Title 6.2 of the Code of Virginia

Washington – Washington Uniform Money Services Act, Revised Code of Washington, Title 19, Chapter 19.230

Texas – All applicable state and federal laws rules and regulations pertaining to money transmission, including Chapter 151 of the Texas Finance Code, relevant provisions of the Bank Secrecy Act and USA PATRIOT Act, and Chapter 271 of the Texas Finance Code, and regulations of the State of Texas, including, but not limited to, the posting of the following notice to consumers as required under Title 7, Section 33.51(d)(1) of the Texas Administrative Code:

"Complaints concerning money transmission activities of Company should be directed to:

For Western Union Branded Money Transfer Complaints:
Western Union Financial Services, Inc.
P.O. Box 6036
Englewood, CO 80112
For Customer Service, please call: 1-800-325-6000

For Orlandi Valuta Branded Money Transfer Complaints:
Western Union Financial Services, Inc.
P.O. Box 6036
Englewood, CO 80112
For Customer Service, please call: 1-800-515-5505

For Vigo Branded Money Transfer Complaints:
Western Union Financial Services, Inc.
P.O. Box 6036
Englewood, CO 80112
For Customer Service, please call: 800-777-8784

For Money Order Complaints:
Western Union Financial Services, Inc.
P.O. Box 7030
Englewood, Colorado 80155-7030
For Customer Services, please call: 1-800-999-9660

If, after contacting Company, you still have an unresolved complaint regarding the company's money transmission activity, then please direct your complaint to:

Texas Department of Banking
2601 North Lamar Boulevard
Austin, Texas 78705
1-877-276-5554 (toll free)
www.banking.state.tx.us"

CALIFORNIA
Agent shall make and keep accounts, correspondence, memoranda, papers, books and other records which the California Commissioner of Financial Institutions by regulation or order requires, and Agent shall preserve such records for the time specified by such regulation or order.

HAWAII
Agent hereby certifies that it is in compliance, and shall comply, with the recordkeeping and reporting requirements under Title 31 United States Code Section 5311 et seq., 31 Code of Federal Regulations Part 1022, Section 210, and other federal and state laws pertaining to money laundering.

KENTUCKY
Pursuant to the laws of the State of Kentucky, WUNA hereby provides Agent with the following information: WUNA is required to comply with applicable federal and state law.

MAINE
Agent is prohibited from providing the Services to anyone under the age of 18 years.

MICHIGAN
In the event WUNA's license is suspended or revoked, the Commissioner shall notify WUNA and order WUNA to send a notice to its Agents directing them to cease providing money transmission services on behalf of WUNA, and the Agents shall immediately cease providing money transmission services as an Agent of WUNA. Agent shall not make any fraudulent or false statement or misrepresentation to a consumer or WUNA or to the Commissioner.

NEW YORK
Agent is prohibited from acting on behalf of the consumer as a courier for the transmission of money, and no Money Order sold may be retained by Agent or any subagent of WUNA. All Money Orders sold must be given by the Agent and any subagent of WUNA to the purchasers of the instruments for their own delivery to the beneficiary. Agent shall not sell any Money Order or money transmission instruments in New York State pursuant to this Agreement unless the name "Western Union Financial Services, Inc." clearly appears on the face of the instrument.

NORTH CAROLINA
Company appoints Agent as its authorized delegate with authority to engage in money transmission on behalf of WUNA. Neither Company nor Agent may authorize subdelegates without the written consent of the Commissioner of Banks of the State of North Carolina (the "Commissioner"). Company and Agent are subject to supervision and regulation by the Commissioner. Company shall issue a certificate of authority for each Company Service offered at each location at which it conducts licensed activities in North Carolina through authorized delegates such as Agent. The certificate(s) shall be posted in public view at each location of Agent in North Carolina and shall state as follows: "Money transmission on behalf of Western Union Financial Services, Inc. is conducted at this location pursuant to the Money Transmitters Act."

TEXAS
Agent hereby certifies that it is familiar with and agrees to fully comply with all applicable state and federal laws, rules, and regulations pertaining to money transmission, including Chapter 151 of the Texas Finance Code and rules adopted thereunder, relevant provisions of the Bank Secrecy Act and the USA PATRIOT Act, and Chapter 271 of the Texas Finance Code. Agent agrees to prepare and maintain all records as required by Chapter 151 of the Texas Finance Code or any rule adopted thereunder or as reasonably requested by the Texas Commissioner of Banking. Agent acknowledges that Company, as a license holder under Chapter 151 of the Texas Finance Code, is subject to regulation by the Texas Commissioner of Banking and that, as part of that regulation, the Commissioner may suspend or revoke an authorized delegate designation or require Company to terminate an authorized delegate designation. Agent acknowledges receipt of the WUNA written policies and procedures applicable to Agent's compliance with applicable state and federal laws. Agent acknowledges that it has been provided the website address through which Agent can access Chapter 151 of the Texas Finance Code and rules adopted pursuant to said chapter (www.banking.state.tx.us) and the Bank Secrecy Act and the USA PATRIOT Act (www.usb.gov and www.fincen.gov, and Chapter 271 of the Texas Finance Code (www.banking.state.tx.us).

Document Integrity Verified          EchoSign Transaction Number: XD3ASMWZ4CT33XZ

The undersigned have executed the foregoing Agreement to be effective as of the date WUNA signs this Agreement (the "Effective Date"). BY SIGNING THIS AGREEMENT, AGENT AGREES TO THE PROVISIONS HEREIN AND ALL ATTACHMENTS HERETO FOR THE SERVICE TO BE PROVIDED BY AGENT.

AGENT:   Ali S Moghaddam
         (Legal Name)

Signature: _Ali Moghaddam_
           Ali Moghaddam (Aug 22, 2014)
           (Authorized Representative)

Name:   Ali Moghaddam
        (Print)

Title:  Owner

Date:   Aug 22, 2014

*SIGNER MUST INITIAL APPLICABLE LINES BELOW*

| Western Union Multi-Brand Money Transfer® Services (Part A) | |
|---|---|
| _Ali_<br>Ali | Western Union Money Transfer® Services |
| | Vigo® Money Transfer Services |
| | Orlandi Valuta® Money Transfer Services |
| _Ali_<br>Ali | Western Union Money Orders® (Part B) |
| | Western Union Convenience Pay® Services (Part C) |

DOCUMENT 2

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

© Document Integrity Verified          EchoSign Transaction Number: XDB0SMWZ4CT33XZ

FOR INTERNAL USE ONLY

WESTERN UNION FINANCIAL SERVICES, INC.

Signature: *Aixa Morales*
Aixa Morales (Aug 25, 2014)
(Authorized Representative)

Name: Aixa Morales
(Print)

Title: Agent Implementatk

Western Union Services to be Offered by Agent:

| Western Union Multi-Brand Money Transfer® Services (Part A) | |
|---|---|
| *KM* | Western Union Money Transfer® Services |
| | Vigo® Money Transfer Services |
| | Orlandi Valuta® Money Transfer Services |
| *KM* | Western Union Money Orders® (Part B) |
| | Western Union Convenience Pay® Services (Part C) |
| | Effective Date: Aug 25, 2014 |

DOCUMENT 2

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.     WU US Agency Agreement – Page 6 of 16

© Document Integrity Verified                                                              EchoSign Transaction Number X0B9SMWZ4OT93XZ

Case 19-80058-CRJ    Doc 1-1    Filed 07/23/19    Entered 07/23/19 14:32:33    Desc
Exhibit A and B    Page 6 of 15

# Western Union Compliance Acknowledgement

Company Name (Full Legal Name): <u>Ali S Moghaddam</u>

City / State or Province / Zip Code: <u>619 Oakwood Ave NW, Huntsville, Alabama, 35811, United States</u>

If you are accepted to be a Western Union Money Transfer™ and/or Money Order™ Agent for Western Union Financial Services, Inc. ("Western Union"), your company will be required to establish an Anti-Money Laundering Compliance Program. Your program must include the following elements:

1. Your company must appoint a person (e.g. the owner or an employee) as the Compliance Officer to oversee your program.

    a. The Compliance Officer will be responsible to: (i) establish companywide Anti-Money Laundering policies and procedures, (ii) provide employee compliance training for every employee conducting Western Union transactions, (iii) monitor the entire compliance program, (iv) ensure appropriate record keeping, (v) ensure compliance with reporting obligations (vi) fulfill any other duties required by law or Western Union policy, and (vii) serve as the primary contact between the company and Western Union or government offices concerning compliance matters.

    b. In preparation for Western Union AML Compliance training and to begin with the establishment of a Compliance Program, please provide the name of the person who has been appointed as the Compliance Officer in the section below, along with all other information required. Western Union requires this information in order to activate the Services. The training can only be provided to the Compliance Officer.

    Compliance Officer Name: <u>Ali Moghaddam</u>    Job Title: <u>Owner</u>

    Address (Street, City, State/Zip code): <u>619 Oakwood Ave NW, Huntsville, Alabama, 35811, UNITED STATES</u>

    Pho  ax:

    Email address:

    c. As a Western Union Money Transfer™ and/or Money Order™ Agent you are to notify Western Union of any changes in the Compliance Officer designation throughout the course of your business relationship with Western Union

2. If your company owns multiple locations, then, in addition to a company Compliance Officer, an employee must be designated at each location as the On-site Compliance Delegate to assist the Compliance Officer in implementing your company's AML Compliance Program. The company's Compliance Officer is responsible to ensure that each On-site Compliance Delegate is properly trained in AML Compliance in order to comply with all compliance duties and responsibilities. The On-site Compliance Delegate will be the location contact for Western Union and government offices concerning site-specific compliance matters.

3. Western Union will provide the Compliance Officer with compliance training and various compliance-related materials as resources to build a compliance program. After AML Compliance training has been completed, your company must document that a compliance program is in place to monitor, track, and ensure compliance with all applicable laws, including but not limited to, the provisions of the USA PATRIOT Act of 2001, the Bank Secrecy Act and/or Western Union policy including the following:

    a. Filing of Currency Transaction Reports for any single or multiple cash transactions over $10,000 (including fees), made by or on behalf of any consumer in a single day.
    b. Identifying and reporting of transactions and/or a series of transactions conducted or attempted, over $2,000 AND that appear suspicious.
    c. Ensuring that proper identification and information is collected and recorded (i.e. Money Order Log) on the same day as the Money Order sales to any individual totaling $3,000 or more.
    d. Ensuring that proper identification and information is verified and recorded on same day as the Money Transfer sales to any individual transacting at the Western Union specified thresholds or totaling the $3,000 Federal requirement or more.
    e. Meeting record retention requirements
    f. Maintaining a plan to provide and document on-going employee compliance training.

4. Your company must agree to provide full cooperation with governmental audits and Western Union compliance program reviews.

You must agree to the information in this Western Union Compliance Acknowledgement to be considered as a candidate to become a Western Union Agent. Western Union in its sole discretion reserves the right to reject and/or decline your application for any reason.

Acknowledgement and Acceptance:

(The person who executed the Agency Agreement must sign this document – any other signature will not be accepted)

X *Ali Moghaddam*                                          Date: Aug 22, 2014
Ali Moghaddam (Aug 22, 2014)



Print Name and Title: <u>Ali Moghaddam, Owner</u>

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.          WU US Agency Agreement – Page 7 of 16

⊘ Document Integrity Verified                                                                    EchoSign Transaction Number XDB0SMWZ4CT33XZ

DOCUMENT 2

**1A. Services.**

1A.1 During the term of this Agreement, Agent shall offer Money Transfer Services and Stored Value Services. As used herein, "Money Transfer Services" means the receipt of funds by Agent for transmission and disbursement for a fee and shall include all of WUNA's Domestic Money Transfer services, International Money Transfer services, Mexico Money Transfer services, Quick Cash, Western Union Payments services, and such other funds transfer or funds disbursement services or methods that WUNA may introduce from time to time, as well as the Western Union Gold Card. To the extent not included in the foregoing sentence, "Stored Value Services" shall include money transfer services provided to issuers of prepaid debit cards and other forms of stored value, including without limitation, Western Union branded prepaid debit or credit cards, Western Union Long Distance Card, and other such stored value products or services that WUNA may introduce from time to time. As used herein, "Money Transfer" means a money transfer transmitted through the WUNA system. WUNA agrees that Agent may conduct the Money Transfer Services using the Western Union Money Transfer® By Phone method of access.

1A.2 Agent agrees that, during the term of this Agreement and for a period of 90 days thereafter, Agent shall not act as agent for, represent, offer or allow to be offered at any location of Agent any other money transfer service or other service similar to any of the Money Transfer Services, including, without limitation, card or ATM based money transfer services, Agent shall not allow any other person or entity that leases or uses space at any of Agent's locations to offer any other money transfer service, other service similar to any of the Money Transfer Services, or participate or act as agent or representative in connection with any money transfer service offered in whole or in part by telephone, automated financial service machine or over the Internet. Agent represents and warrants that Agent is not obligated to offer any money transfer services at any location of Agent that compete with the Money Transfer Services. Notwithstanding the limitations set forth in this Section 1A.2, Agent may independently reach agreement with, and offer the branded services of, Western Union Financial Services, Inc. and/or any of its affiliates, at any Location.

1A.3 Agent agrees that, if Agent breaches Section 1A.2 WUNA's remedies at law will not be adequate, and in addition to the other remedies set forth herein, WUNA shall be entitled to specific performance, including appropriate injunctive relief.

**2A. Procedures.**

2A.1 WUNA shall provide Agent and Agent's designated employees with reasonable training in the provision of the Money Transfer Services as WUNA deems necessary. WUNA shall furnish Agent with the forms necessary for Agent's provision of the Money Transfer Services (including MT Checks, as defined below). Agent shall not use any other forms in its provision of the Money Transfer Services.

2A.2 For each Money Transfer sent from an Agent location, Agent shall collect the principal amount of the Money Transfer, the applicable Consumer Send Fee (as defined below) and any other WUNA service fees that may be applicable. Agent shall not impose any other fee, charge, requirement, or restriction of any kind upon the Money Transfer sender that is not required by WUNA or Applicable Law. Agent's acceptance of any form of payment for Money Transfers other than cash shall be at Agent's sole and exclusive risk and Agent shall be liable to WUNA for the principal amount of the Money Transfer, the applicable Consumer Send Fee and any other WUNA service fees that may be applicable, regardless of whether Agent ultimately receives payment therefor. As used herein, the "Consumer Send Fee" means the fee set by WUNA, which is charged to a consumer for sending a Money Transfer at the time of initiating such transaction. The Consumer Send Fee does not include any difference between the foreign currency exchange rate given to consumers (set by WUNA) and the foreign currency exchange rate that is received by WUNA.

2A.3 With respect to Money Transfers received by consumers at any of Agent's locations, Agent shall not impose any fee, charge, requirement, or restriction of any kind upon a Money Transfer recipient that is not required by WUNA or Applicable Law.

2A.4 Agent shall not use the Money Transfer Services to send or receive a Money Transfer on behalf of Agent, or of any principal, officer, director or employee of Agent, or of any member of Agent's family, as applicable. However, this paragraph shall not be construed to prohibit employees of Agent from sending or receiving Money Transfers in the ordinary course and in customary arm's-length transactions.

2A.5 Agent agrees that WUNA may establish, from time to time and in WUNA's sole discretion, both daily and single transaction limits relating to the number and principal amount of transactions that may be transacted at each of Agent's locations. WUNA reserves the right to temporarily suspend the Money Transfer Services at any location if Agent exceeds a daily Money Transfer limit established by WUNA.

2A.6 Agent shall not advertise, solicit, or negotiate any of the Services in any language other than English or Spanish, without the prior written approval of WUNA.

**3A. Trust Relationship; Liability for Loss.**

3A.1 As of the Effective Date, WUNA appoints Agent as its delegate and trustee for the limited purposes of offering the Money Transfer Services for sale to the public, collecting MT Trust Funds and, as applicable, imprinting WUNA money transfer checks or loading cards (money transfer checks and cards shall collectively be referred to as "MT Checks"), all in accordance with the provisions of this Agreement. Agent shall act in a fiduciary capacity and hold the MT Checks and MT Trust Funds in trust for the benefit of WUNA and shall maintain and account for the MT Trust Funds separate and apart from all other funds and monies of Agent. Agent agrees that, in the event Agent commingles MT Trust Funds with any other funds, such funds shall be impressed with a trust to the extent of the MT Trust Funds. Agent shall not acquire by operation of this Agreement, or otherwise, any right, title or interest of any kind in the MT Trust Funds or MT Checks. All MT Trust Funds and MT Checks remain the sole and exclusive property of WUNA. Agent's financial records shall identify the MT Trust Funds and MT Checks as funds and other property held in trust for the benefit of WUNA.

3A.2 Anything to the contrary notwithstanding, Agent shall safeguard and protect all MT Trust Funds, MT Checks and MT Equipment in its capacity as a fiduciary or trustee entrusted with such cash, similar instruments or equipment for safekeeping. Agent shall be absolutely liable for any loss, theft, seizure, forfeiture or misappropriation of the same until such MT Trust Funds, MT Checks or MT Equipment are received by or are in the possession of WUNA. Agent shall be absolutely liable to WUNA for: (a) all MT Trust Funds; (b) the principal amount of all MT Checks lost, stolen, destroyed, materially damaged, misappropriated, seized or forfeited from Agent and which are subsequently paid by WUNA; and (c) the replacement value of all MT Equipment lost, stolen, destroyed, damaged, misappropriated, seized or forfeited while in Agent's possession. Within 24 hours after unused MT Checks or MT Equipment provided hereunder have been lost, stolen, destroyed, damaged, misappropriated, seized or forfeited, Agent shall notify WUNA of the serial numbers of such MT Checks or MT Equipment. However, such notice does not relieve Agent of its liability as provided herein. Agent agrees to pay all MT Trust Funds to WUNA upon demand, regardless of the presence or absence of negligence of Agent, WUNA or any other person or entity.

4A. Remittance of MT Trust Funds. Agent shall deposit all monies (including, without limitation, Money Transfer principal and fees) received by Agent in connection with the provision of the Money Transfer Services and/or the Stored Value Services (the "MT Trust Funds") into the Trust Account no later than 10:00 a.m., local time at the place of deposit, on the business day following receipt thereof. WUNA will then initiate a draft (via Automated Clearing House or other electronic means) against the Trust Account for the total amount of all funds due WUNA hereunder. If Agent fails to comply with this Section 4A, WUNA may exercise any of the rights and/or remedies set forth in Section 8.3 of the Agreement. WUNA may amend or modify the provisions of this Section 4A, in the following instances: (a) immediately upon notice to Agent, if Agent (i) fails to remit amounts due to WUNA in accordance with this Section 4A, or (ii) breaches any material provision of the Agreement, or (b) upon 10 days prior notice to Agent; however, prior to the conclusion of this 10-day period, Agent may elect to terminate this Agreement by providing WUNA with 30 days notice during which time such changes shall not be in effect.

5A. Payments to Agent.

5A.1 Commissions. In consideration of and subject to Agent's performance of its obligations hereunder, including the Minimum Transaction Volume requirements (as defined below), WUNA shall pay to Agent monthly fees and commissions as follows: WUNA will pay to Agent base commissions for WUNA transactions processed by Agent as follows (collectively, "Base Transaction Commissions"): (a) Consumer Money Transfer Base Transactions: Agent's commission for Money Transfers sent by Agent will be 7% of the Consumer Send Fee. Agent's commission for Money Transfers paid out with cash by Agent will be 7% of the Consumer Send Fee. Agent's commission for MoneyWise Money Transfer Receive Card (the "Card") payouts will be $0.75 for each Card distributed and subsequently activated by the consumer. For transactions originating outside the United States, Agent's commission will be paid in United States dollars in accordance with WUNA's settlement and currency conversion arrangements with the originating international agent. (b) Other Transactions: Agent's commission for

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

DOCUMENT 2

✔ Document Integrity Verified

EchoSign Transaction Number: XQ88BMWZ4DT33XZ

each Quick Cash Money Transfer paid by Agent will be $1.00. Agent's commission for each Western Union Payment paid by Agent will be as follows:

| FEE BAND | COMMISSION | MINIMUM COMMISSION |
|---|---|---|
| $0.00 to $1.00 | 50% | $0.20 |
| $1.01 to $2.99 | 20% | $0.55 |
| $3.00 to $6.99 | 16% | $0.70 |
| $7.00 or $9.99 | 14% | $1.00 |
| $10.00 or HIGHER | 12% | $1.20 |

Agent's commission for Stored Value Service Packages sold by Agent will be as follows: (1) for each Stored Value Package sold by Agent, Agent will receive 40% of the transaction fee; and (2) for each re-load processed by Agent, Agent will receive 25% of the current reload fee. This Section 5A.1(b) may be modified by WUNA in its sole discretion pursuant to any event described in Section 9A below. Agent's "Minimum Transaction Volume" shall be 30 send transactions per month, beginning three months following the Effective Date. WUNA reserves the right to terminate this Part A if Agent does not achieve the Minimum Transaction Volume.
5A.2 Calculation: Payment Reports. Agent's compensation for each of Agent's locations for each calendar month shall consist of Agent's Base Transaction Commissions and Performance Bonus and Volume Bonus, if any, minus any taxes due to WUNA pursuant to Section 6A.2, for each location. Money Transfer principal is not included in the calculation of Agent commissions. Except for the fees and commissions to be paid to Agent as described in Section 5A.1 above, WUNA shall be entitled to the balance of all compensation and other revenues received for or in connection with the Services. WUNA will pay Agent's compensation monthly in the month following the calendar month in which it is earned. WUNA shall pay such compensation to Agent by paper check or by credit (via Automated Clearing House or other electronic means), as determined by WUNA in its sole discretion. WUNA will supply supporting reports to indicate the basis for each location's calculation and to summarize monthly performance results.
6A. Money Transfer Equipment.
6A.1 WUNA may furnish to Agent, in bailment, the equipment necessary for Agent to provide the Money Transfer Services (the "MT Equipment") and/or the MT Software (as defined below). This Agreement creates a bailment solely for temporary possession and use of the MT Equipment, and no other right, title or interest in or to the MT Equipment shall hereby pass to Agent. Agent shall have and shall assume the exclusive care, custody and control of the MT Equipment. Agent shall not permit any abuse, deterioration, wreckage, dilapidation or waste of any MT Equipment and shall maintain insurance to cover the MT Equipment in accordance with Section 11(d) of the Agreement. Agent shall use the MT Equipment only in connection with the provision of the Money Transfer Services. At Agent's expense, Agent shall provide, in an area reasonably convenient for providing the Money Transfer Services, either an analog telephone line or secure internet connectivity with VPN, as may be directed by WUNA, and WUNA shall make reasonable arrangements for data interchange with WUNA's computer system. In addition to the telephone line or Internet access required in the preceding sentence for providing the Money Transfer Services, Agent shall maintain a business telephone on its premises. Agent shall maintain at each location an automated teller machine that will accept and honor the card referenced in Subsection 2A.3 above. In the event there is no longer an active ATM at an Agent location, Agent shall notify Western Union within 24 hours and Western Union may elect to suspend Agent's ability to offer the Services or terminate this Agreement with respect to such location.
6A.2 Agent shall be responsible to WUNA for all state and local sales, use, property, business or similar taxes and/or assessments relating to the MT Equipment.
6A.3 Title to all MT Equipment computer programs, computer software, microcode, firmware, source code, including all updates, replacements and copies thereof, provided by WUNA to Agent ("MT Software") shall remain in WUNA, and no title thereto is transferred to Agent hereby. During the term of this Agreement, Agent is hereby granted a royalty-free, terminable, non-transferable and non-exclusive license to use the MT Software for the sole purpose of providing the Money Transfer Services and for such other purposes as WUNA or its affiliates may specify in writing from time to time. Such license shall terminate upon termination of this Agreement. In order to protect WUNA's trade secrets in the MT Software Agent shall not reverse engineer, decompile, copy, modify, create derivative works of, transfer, sell, publish or disclose all or part of the MT Software. Agent agrees that the MT Software is proprietary and confidential information of WUNA.

7A. Merchandising Standards. Subject to the restrictions imposed by Applicable Law, Agent must display: (a) the forms and form holder provided by WUNA which are necessary for providing the Services, brochures provided by WUNA, and a WUNA window decal; and (b) any other merchandising materials as mutually agreed upon by Agent and WUNA, but not less than at least one other Services branded item.
8A. Termination Responsibilities; Liquidated Damages.
8A.1 Immediately upon expiration or termination of Part A or this Agreement, or upon the closure of a location, with respect to that location, Agent shall: (a) stop presenting itself to the public as providing the Services; (b) make no use of WUNA's Intellectual property, Consumer Information or confidential information and return the same to WUNA; (c) refer all calls and consumers regarding the Services to the telephone numbers and locations specified by WUNA and Agent shall not divert any such calls or consumers to a competitor of WUNA or disparage either WUNA or the Services; (d) at Agent's sole cost and expense, return to WUNA all of the following: all unused MT Checks, stale licensing materials (if any), Consumer Information, information and materials of any type relating to WUNA's security measures and procedures, the MT Equipment, which shall be delivered in good repair and condition, reasonable wear and tear excepted (all equipment shall be shipped or mailed to WUNA freight or postage prepaid and fully insured for the full replacement value thereof), and any other items that WUNA has provided to Agent; (e) at Agent's sole cost and expense, remove and (at WUNA's election) deliver to WUNA or dispose of all signs, displays and other materials containing WUNA's name or logo (or will permit WUNA to do so at Agent's sole cost and expense); (f) render a full accounting to WUNA for all MT Checks furnished to Agent, all Services transacted through Agent and all MT Trust Funds; and (g) pay to WUNA all MT Trust Funds and any other amounts due to WUNA in accordance with the terms of this Agreement. In addition, WUNA will provide to Agent a 12" by 18" notice displaying WUNA's telephone numbers and the names, addresses and telephone numbers of locations where the Money Transfer Services are available. Agent shall post such notice in a conspicuous location for a period of 90 days following the termination of this Agreement. Upon any termination hereof, WUNA may instruct the local telephone company to remove Agent's locations from WUNA's listings in any telephone directory records and may notify its respective consumers of the termination and direct them to other service locations.
8A.2 If this Agreement is terminated prior to the expiration of the Initial Term, Agent shall, in addition to all of Agent's obligations set forth in Section 8A.1, reimburse WUNA for the costs of installing the signs provided to Agent by WUNA, multiplied by a fraction, the numerator of which is the number of months remaining in the Initial Term, and the denominator of which is number of months in the Initial Term.
8A.3 If this Agreement is improperly terminated by Agent, or otherwise terminated due to a breach of this Agreement by Agent then, in addition to any other remedies provided herein or otherwise available to WUNA, Agent shall pay WUNA, as liquidated damages, upon demand, an amount equal to: the average monthly consumer fees collected by Agent for the Money Transfer Services provided by WUNA during the 90 days preceding either the date of first breach by Agent or the effective date of such termination (as may be elected by WUNA in its sole discretion), less the actual commissions and bonuses paid to Agent by WUNA during such 90 day period, multiplied by the number of months (including any pro rata portion of a month) then-remaining in the Initial Term or the Renewal Term. Agent acknowledges and agrees that the amount calculated and the method of calculation specified above are reasonable, provide a reasonable estimate of WUNA's probable damages in the event of such termination, and does not constitute a penalty.
9A. Discontinuation and Modification of Service Methods. If WUNA discontinues offering any Service through any particular Service Method (as defined below) or modifies any Service through any particular Service Method, which WUNA may do in its sole discretion, or any other optional service offered by WUNA, WUNA may terminate or amend this Agreement as it concerns such discontinued or modified Service Method. The effective date of such termination or amendment under this Section 9A shall be the date on which WUNA discontinues or modifies such Service Method; provided, however, that WUNA shall use commercially reasonable efforts to notify Agent at least 30 days prior to such termination or amendment. As used herein, "Service Method" means the following Money Transfer Services: Quick Cash, Western Union Payments services, optional services of WUNA (including messaging, delivery, telephoning the receiver, etc.) and such other methods of providing the Money Transfer Services that WUNA may introduce from time to time.

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

© Document Integrity Verified          EchoSign Transaction Number: XDU0SMWZ4CT33XZ

1B. Services. During the term of this Agreement, Agent shall offer for sale to the public money orders issued by WUNA (the "Money Orders"). Agent agrees that during the term of this Agreement and for a period of 90 days thereafter, Agent shall not offer for sale any money orders other than the Money Orders. Agent represents and warrants that Agent is not obligated to offer any money orders at any location of Agent that compete with the Money Orders. Agent agrees that, if Agent breaches this Section 1B, WUNA's remedies at law will not be adequate, and in addition to the other remedies set forth herein, WUNA shall be entitled to specific performance, including injunctive relief.

2B. Procedures.

2B.1 WUNA shall train Agent and Agent's designated employees in the provision of the Money Order Services as WUNA deems necessary.

2B.2 Agent shall not sell any single Money Order with a dollar amount imprinted on the Money Order (the "Face Value") exceeding $1,000. Agent shall collect the Face Value of each Money Order sold. Agent may also collect a consumer fee for each Money Order sold, provided that in establishing such consumer fee, Agent shall comply with all Applicable Laws and regulations with respect to such fees. Agent's acceptance of any form of payment for Money Orders other than cash shall be at Agent's sole and exclusive risk.

2B.3 Agent shall not use Money Orders to pay vendors or for any other obligation of Agent, any affiliate of Agent, or of any principal, officer, director or employee of Agent, or of any member of Agent's family, as applicable.

2B.4 Agent agrees that WUNA may establish, from time to time and in WUNA's sole discretion, daily limits relating to the number and aggregate Face Value of Money Orders that may be sold at each location. WUNA reserves the right to temporarily suspend Money Order sales at any location if Agent exceeds a daily Money Order sales limit established by WUNA.

2B.5 Agent agrees that WUNA shall be entitled, in its sole discretion, to brand the Money Orders under any business name, trade name or trademark designated by WUNA.

2B.6 Without the prior written approval of WUNA, Agent shall not advertise, solicit, or negotiate any WUNA services in any language other than English or Spanish.

3B. Trust Relationship; Liability for Loss.

3B.1 As of the Effective Date, WUNA appoints Agent as its agent and trustee for the limited purposes of offering the Money Orders for sale to the public, collecting the Face Value of any and all Money Orders sold by Agent, plus all MO Fees and all Monthly Rental Charges (collectively, the "MO Trust Funds") and imprinting Money Orders, all in accordance with the provisions of this Agreement. Agent shall act in a fiduciary capacity and hold the Money Orders and MO Trust Funds in trust for the benefit of WUNA and shall maintain and account for the MO Trust Funds separate and apart from all other funds and monies of Agent. Agent agrees that, in the event Agent commingles MO Trust Funds with any other funds, such funds shall be impressed with a trust to the extent of the MO Trust Funds. Agent shall not acquire by operation of this Agreement, or otherwise, any right, title or interest of any kind in the MO Trust Funds or Money Orders. All MO Trust Funds and Money Orders remain the sole and exclusive property of WUNA. Agent's financial records shall identify the MO Trust Funds and Money Orders as funds and other property held in trust for the benefit of WUNA.

3B.2 Anything to the contrary notwithstanding, Agent shall safeguard and protect all MO Trust Funds, Money Orders and MO Equipment in its capacity as a fiduciary or trustee entrusted with such cash, similar instruments or equipment for safekeeping. Agent shall be absolutely liable for any loss, theft, seizure, forfeiture or misappropriation of the same until such MO Trust Funds, Money Orders or MO Equipment are received by or are in the possession of WUNA. Agent shall be absolutely liable to WUNA for: (a) all MO Trust Funds; (b) the face value of all Money Orders lost, stolen, destroyed, materially damaged, misappropriated, seized or forfeited from Agent and which are subsequently paid by WUNA; and (c) the replacement value of all MO Equipment lost, stolen, destroyed, damaged, misappropriated, seized or forfeited while in Agent's possession. Within 24 hours after unsold or unused Money Orders or MO Equipment provided hereunder have been lost, stolen, destroyed, damaged, misappropriated, seized or forfeited, Agent shall notify WUNA of the serial numbers of such Money Orders or MO Equipment. However, such notice does not relieve Agent of its liability as provided herein, and WUNA shall have no obligation to stop payment on or dishonor any Money Order, regardless of whether WUNA has been provided notice of such loss or theft. Agent agrees to pay all MO Trust Funds to WUNA upon demand, regardless of the presence or absence of negligence of Agent, WUNA or any other person or entity.

4B. Remittance and Reporting Procedures.

4B.1 Agent shall pay $ 0.320 (the "MO Fee") to WUNA for each Money Order sold by Agent. The MO Fee is predicated on the expectation that Agent sells a minimum of 2,000 Money Orders annually at all of the locations listed on Attachment I, combined (the "Minimum Sales Requirement"). In the event Agent does not meet the Minimum Sales Requirement, WUNA may: (a) adjust the MO

Fee (b) in accordance with Section 6B.4 below, adjust Agent's Monthly Rental Charge; or (c) terminate this Part B.

4B.2 On each Remittance Day (as set forth in the chart below), or on the succeeding "Banking Business Day" (defined as a day on which federal banks are open for business) if such day is not a Banking Business Day, Agent shall remit all funds as follows: (Check one).

☒ (DEBIT ACH) WUNA will initiate a draft (via Automated Clearing House or other electronic means) against the Trust Account for the total amount of all funds due WUNA hereunder.

☐ (WIRE) Agent shall, at its own expense, complete a wire transfer from the trust account to an account designated by WUNA of all funds due WUNA hereunder.

The total amount to be remitted shall be indicated by WUNA on a Money Order Sales Summary Report and will be equal to the Face Value of all Money Orders used or sold during the Reporting Period plus the requisite MO Fees, any Monthly Rental Charges then due, and any taxes due to WUNA pursuant to Section 6B.2. Each Reporting Period shall end at the time of Agent's close of business on the final day of such Reporting Period, or at a time selected by Agent between 7 p.m. and 11:59 p.m. on the final day of such Reporting Period if Agent does not close its business on the final day of such Reporting Period.

| REPORTING PERIOD(S) MO Trust Funds and MO Fees for Money Orders sold | REMITTANCE DAY(S) Will be remitted to WUNA on |
|---|---|
| MONDAY TUESDAY WEDNESDAY THURSDAY FRIDAY thru SUNDAY | TUESDAY WEDNESDAY THURSDAY FRIDAY MONDAY |

4B.3 If Agent fails to comply with this Section 4B WUNA may take any or all of the Remedial Actions set forth in Section 8.3 of the Agreement, or WUNA may change the provisions of Section 4B: (a) upon notice to Agent, if Agent fails to remit amounts due to WUNA in accordance with the foregoing chart, or if Agent breaches any other material provision of the Agreement, or (b) upon 10 days prior notice to Agent, provided that before the conclusion of this 10-day period, Agent may elect to terminate Part B of this Agreement by providing 30 days prior notice to WUNA, and the changes shall not take effect. Additionally, WUNA may change the MO Fee at any time upon 30 days prior notice to Agent, provided that before the conclusion of this 30-day period, Agent may elect to terminate Part B of this Agreement by providing 30 days prior notice to WUNA, and the changes shall not take effect.

5B. Merchandising Standards. Subject to the restrictions imposed by Applicable Law, Agent must display a window decal provided by WUNA.

6B. Money Order Equipment.

6B.1 WUNA agrees to furnish to Agent, in bailment, the equipment necessary for Agent to sell and imprint Money Orders (the "MO Equipment") and/or the MO Software (as defined below). This Agreement creates a bailment solely for temporary possession and use of the MO Equipment, and no other right, title or interest in or to the MO Equipment shall hereby pass to Agent. Agent shall have and shall assume the exclusive care, custody and control of the MO Equipment. Agent shall not permit any abuse, deterioration, wreckage, dilapidation or waste of any MO Equipment. Agent shall use the MO Equipment only in connection with the provision of Money Orders. At Agent's expense, Agent shall provide WUNA with access to a standard analog phone line, or secure Internet connectivity through VOIP, as determined by WUNA. Agent shall cause the MO Equipment to transmit all Money Order sales data to WUNA on a daily basis.

6B.2 Agent shall be responsible to WUNA for all state and local sales, use, property, business or similar taxes and/or assessments relating to the MO Equipment. To the extent Agent integrates MO Software (as defined below) into its own point of sale equipment, Agent agrees to download upgrades to the MO Software within a reasonable time after its receipt of notice from WUNA, but in no event more than 30 days following such notice.

6B.3 Title to all computer programs, computer software, microcode, firmware, source code, (including all updates, replacements and copies thereof) provided to Agent ("MO Software"), and all MO Equipment, shall remain in Western Union and no title or other interest thereto is transferred to Agent hereby. During the term of this Agreement, Agent is hereby granted a royalty-free, terminable, non-

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

Document Integrity Verified
EchoSign Transaction Number: XDHQSMWZ4OT39XZ

DOCUMENT 2

DOCUMENT 2

transferable and non-exclusive license to use the MO Software solely for the purposes of providing Money Orders and for such other purposes as WUNA or its affiliates may specify in writing from time to time. Such license shall terminate upon termination of this Agreement. Agent agrees that the MO Software is the proprietary and confidential information of WUNA. In order to protect WUNA's trade secrets in the MO Software, except to the extent permitted by Applicable Law, Agent agrees not to reverse engineer, decompile, copy, modify, create derivative works of, transfer, sell, publish or disclose the MO Software. Agent agrees that the MO Software is proprietary and confidential information of WUNA.

6B.4  Agent shall pay a monthly rental charge of $ 20.00 , per calendar month for each FDX-400, or similar machine ("MO Machine"), provided to Agent ("Monthly Rental Charge") for use in the provision of the Money Order Services; provided, however, that if Agent does not meet the Minimum Sales Requirement, WUNA may increase the Monthly Rental Charge by $15.00 per MO Machine upon notice to Agent. The Monthly Rental Charge shall be payable on the first banking business day of each calendar month commencing on the first banking business day of the first calendar month after Agent begins offering the MO Service.

7B.  Termination Responsibilities; Liquidated Damages.

7B.1  Immediately upon expiration or termination of Part B or this Agreement, or in the event  an Agent location ceases to offer the Money Order Services, with respect to each such location, Agent shall (a) stop presenting itself to the public as selling Money Orders, (b) make no use of WUNA's intellectual property, Consumer Information, or confidential information, (c) refer all calls and consumers intended for WUNA to telephone numbers and locations specified by WUNA and will not divert any such calls or consumers to a WUNA competitor nor disparage WUNA or the Money Orders, (d) at Agent's sole cost and expense, return to WUNA all of the following: all unused money orders, all state licensing materials (if any); all Consumer Information and all information and materials of any type relating to WUNA's security measures and procedures; all MO Equipment and MO Software, all of which shall be delivered to WUNA in good repair and condition, reasonable wear and tear excepted; and all other items that WUNA has provided to Agent, (e) at Agent's sole cost and expense, remove and (at WUNA's election) deliver to WUNA or dispose of all signs, displays and other materials containing the WUNA or WIJNA name or logo (or will permit WUNA to do so at Agent's sole cost and expense), (f) render a full accounting to WUNA for all Money Orders furnished to Agent, all Money Orders sold or used by Agent and all MO Trust Funds, and (g) pay to WUNA any other amounts that may be due to WUNA in accordance with the terms of this Agreement.  In addition, WUNA will provide to Agent a 12" by 18" notice displaying WUNA telephone numbers and the names, addresses and telephone numbers of locations where Money Orders are available, and Agent will post such notice and keep it posted in a conspicuous location for a period of 90 days following the termination of this Agreement.   Upon any termination hereof, WUNA may instruct the local telephone company to remove Agent's locations from the WUNA listings in any telephone directory records.

7B.2  In the event that (a) this Agreement is improperly terminated by Agent, or (b) otherwise terminated due to a breach of this Agreement by Agent, then, in addition to any other remedies contained herein or otherwise available to WUNA, Agent shall pay WUNA, upon demand, an amount equal to the average monthly WUNA fees collected by Agent during the 90 days preceding either the date of first breach by Agent or the effective date of such termination (as may be elected by WUNA in its sole discretion) plus the Monthly Rental Charges paid by Agent during such 90 day period, multiplied by the number of months (including any pro rata portion of a month) then remaining in the Initial Term or the Renewal Term. Agent acknowledges and agrees that the amount calculated and  the method of calculation specified above are reasonable and provide a reasonable estimate of WUNA's probable damages in the event of such termination and does not constitute a penalty.

⊘ Document Integrity Verified                                                                EchoSign Transaction Number XDB88MWZ4UT33XZ

DOCUMENT 2

## ACH DRAFT AUTHORIZATION AGREEMENT
### (Trust Fund Account)

**LOCATION NAME:** Fuel City

**PRODUCT NAME:** WU Money Order

The undersigned Agent authorizes Western Union Financial Services, Inc. ("Western Union") to initiate debit and credit entries (via automated clearing house or other electronic means) to or from the Trust Account specified below (or any replacement accounts specified by Agent in a Western Union Bank Change Form and approved by Western Union)(individually, an "Account" and collectively the "Accounts")) in accordance with this Authorization and the applicable rules of the National Automated Clearing House Association and its related member associations ("ACH Rules") for the purpose of obtaining from Agent amounts payable to Western Union, including but not limited to money transfer trust funds.

Agent represents and warrants that (i) if Agent is a natural person, the Accounts are and will be maintained primarily for commercial purposes and not personal, family or household purposes; and (ii) the signature(s) below are all the signature(s) necessary to make those Authorizations effective as to debit and credit entries to the Accounts. Western Union shall not be liable for any act or omission of any automated clearing house, depository, or other person, including the originating depository financial institution(s). Agent will indemnify and hold harmless Western Union for any and all claims, demands, losses, liabilities or expense, including attorneys' fees and expenses, directly or indirectly resulting or arising out of the breach or inaccuracy of these warranties and representations.

Agent hereby agrees to be bound by the ACH Rules in effect from time to time. Agent further agrees to complete and execute any and all additional documents that the bank(s) maintaining the Accounts may require to effectuate and maintain this authorization. These authorizations shall remain in full force and effect until Western Union and the bank have received at least sixty (60) days prior written notification from Agent of either or both of their termination. Agent further agrees not to terminate these authorizations until alternative payment arrangements acceptable to Western Union, in its sole discretion, have been made with another bank or banks.

TRUST ACCOUNT AUTHORIZATION. This Trust Account Authorization, including the terms set forth in Sections 1 through 3 above, contains the entire agreement of the parties with respect to the Trust Account subject matter herein. This Trust Account Authorization may be amended only by a writing signed by both parties.

| AGENT/BUSINESS NAME *(please print)*<br>Ali S Moghaddam | | AGENT ID NUMBER<br>*(if assigned)* |
|---|---|---|
| NAME EXACTLY AS IT APPEARS ON THE ACCOUNT<br>Ali Moghaddam | | |
| BANK NAME<br>Bancorp | BRANCH | CITY, STATE, ZIP CODE |
| BANK ACCOUNT NUMBER<br>████████ | TRANSIT/ABA NUMBER<br>███████ | |
| SIGNATURE<br>*Ali Moghaddam*<br>Ali Moghaddam (Aug 22, 2014) | | DATE<br>Aug 22, 2014 |
| NAME AND TITLE *(please print)*<br>Ali Moghaddam, Owner | | |

WHEN ACH, PLEASE ATTACH VOIDED CHECKS FOR ACCOUNT LISTED

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

⊘ Document Integrity Verified

EchoSign Transaction Number: XD8G9MWZ4CT33XZ

## ACH DRAFT AUTHORIZATION AGREEMENT
### (Trust Fund Account)

**LOCATION NAME: Fuel City**

**PRODUCT NAME: WU MT**

The undersigned Agent authorizes Western Union Financial Services, Inc. ("Western Union") to initiate debit and credit entries (via automated clearing house or other electronic means) to or from the Trust Account specified below (or any replacement accounts specified by Agent in a Western Union Bank Change Form and approved by Western Union)(individually, an "Account" and collectively the "Accounts")) in accordance with this Authorization and the applicable rules of the National Automated Clearing House Association and its related member associations ("ACH Rules") for the purpose of obtaining from Agent amounts payable to Western Union, including but not limited to money transfer trust funds.

Agent represents and warrants that (i) if Agent is a natural person, the Accounts are and will be maintained primarily for commercial purposes and not personal, family or household purposes; and (ii) the signature(s) below are all the signature(s) necessary to make these Authorizations effective as to debit and credit entries to the Accounts. Western Union shall not be liable for any act or omission of any automated clearing house, depository, or other person, including the originating depository financial institution(s). Agent will indemnify and hold harmless Western Union for any and all claims, demands, losses, liabilities or expense, including attorneys' fees and expenses, directly or indirectly resulting or arising out of the breach inaccuracy of these warranties and representations.

Agent hereby agrees to be bound by the ACH Rules in effect from time to time. Agent further agrees to complete and execute any and all additi documents that the bank(s) maintaining the Accounts may require to effectuate and maintain this authorization. These authorizations shall rema full force and effect until Western Union and the bank have received at least sixty (60) days prior written notification from Agent of either or bo their termination. Agent further agrees not to terminate these authorizations until alternative payment arrangements acceptable to Western Union its sole discretion, have been made with another bank or banks.

TRUST ACCOUNT AUTHORIZATION. This Trust Account Authorization, including the terms set forth in Sections 1 through 3 above, cont the entire agreement of the parties with respect to the Trust Account subject matter herein. This Trust Account Authorization may be amended o by a writing signed by both parties.

| AGENT/BUSINESS NAME *(please print)*<br>Ali S Moghaddam | | AGENT ID NUMBER<br>*(if assigned)* |
|---|---|---|
| NAME EXACTLY AS IT APPEARS ON THE ACCOUNT<br>Ali Moghaddam | | |
| BANK NAME<br>Bancorp | BRANCH | CITY, STATE, ZIP CODE |
| BANK ACCOUNT NUMBER | TRANSIT/ABA NUMBER | |
| SIGNATURE<br>*Ali Moghaddam*<br>Ali Moghaddam (Aug 22, 2014) | | DATE<br>Aug 22, 2014 |
| NAME AND TITLE *(please print)*<br><br>Ali Moghaddam, Owner | | |

WHEN ACH, PLEASE ATTACH VOIDED CHECKS FOR ACCOUNT LISTED

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved.

© Document Integrity Verified     EchoSign Transaction Number: XD8B5MWZ4CY33KZ

DOCUMENT 2

DOCUMENT 2

## ATTACHMENT I

### AGENT LOCATION(S), SERVICE(S) PROVIDED
### [MUST BE COMPLETED FOR EACH LOCATION]

☒ New Agent ☐ Add-On Agent ☐ Change of Ownership (Previous Agent #_____) ☐ Renewal (Existing Agent #_____)

☒ MONEY TRANSFER (☒ WU ☐ OV ☐ Vigo)  ☒ MONEY ORDER  ☐ CONVENIENCE PAY

Location Doing Business As Name: Fuel City

Location Address: 619 Oakwood Ave NW

City/State/Zip: Huntsville / Alabama / 35811

Contact First Name: Ali Contact Middle Name: Contact Last Name: Moghaddam

Contact Email Address ▓▓▓▓▓▓▓▓▓

Telephone Number ▓▓▓▓▓▓▓ Fax Number:

*WU/OV/Vigo Service Hours:

Mon.: 6:00 AM - 10:00 PM Thu.: 6:00 AM - 10:00 PM

Tue.: 6:00 AM - 10:00 PM Fri.: 6:00 AM - 10:00 PM

Wed.: 6:00 AM - 10:00 PM Sat.: 6:00 AM - 10:00 PM

Sun.: 6:00 AM - 10:00 PM

Holidays.:

Christmas: 6:00 AM - 10:00 PM

New Year's: 6:00 AM - 10:00 PM

Easter: 6:00 AM - 10:00 PM

Thanksgiving: 6:00 AM - 10:00 PM

WU Minimum Cash Payout: 500

Languages available: ☒ English Spanish ☐ Creole ☐ Mandarin ☐

Will Agent pay-out VIGO Money Transfers received by consumers at this location? ☐ Yes ☐ No

If yes, Agent agrees to payout in cash (choose one):

☐ up to $500  ☐ up to $5,000
☐ up to $1,000  ☐ any amount
☐ up to $2,500

*If circumstances interfere with Agent's hours of operation at any location, Agent shall inform Company via telephone of the nature and expected duration of such interference and the temporary hours of operation at least five days in advance, circumstances permitting, or in any event as soon as reasonably practicable.
[Please use additional sheets if necessary such that each of Agent's locations is detailed.]

Western Union Confidential © 2014 Western Union Holdings, Inc. All Rights Reserved. WU US Agency Agreement – Page 15 of 16

✅ Document Integrity Verified  EchoSign Transaction Number: XDU0SMWZ4CT33XZ



**EXHIBIT**

B

## WESTERN UNION FINANCIAL SERVICES, INC.
## PERSONAL INDEMNITY AND GUARANTY

In order to Induce Western Union Financial Services, Inc. (referred to herein as "WUNA") to enter into those certain Agency Agreements by and between WUNA and  Ali S Moghaddam  for the provision of Western Union, Orlandi Valuta and Vigo branded services (individually and collectively referred to herein as the "Agreement") and in consideration thereof and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned personally, individually, jointly and severally guarantees to WUNA the prompt payment in full by Agent (as defined in the Agreement) of all sums and amounts payable under the Agreement and the prompt and complete performance by Agent of all other obligations thereunder.

Each of the undersigned agrees, without WUNA's first having to proceed against Agent, to pay on demand all sums due and to become due to WUNA under the Agreement and all damages, losses, costs, attorney's fees and expenses which WUNA may suffer by reason of Agent's or any of the undersigned's failures to pay or perform any obligation under the Agreement. This guaranty is an absolute, unconditional and continuing guaranty of payment and complete performance by Agent of all obligations under the Agreement and all substitutions, renewals, or replacements thereof.

WUNA may at any time and from time to time, without the undersigned's consent, and without affecting or impairing the obligation of any of the undersigned hereunder, take any action with respect to, or waive or amend any of the obligations of the Agent, including without limitation, any of the following: (i) renew or extend any obligations of Agent or of co- guarantors (whether hereunder or under a separate instrument) or of any other party at any time directly or contingently liable for the payment of said obligations without limit as to the number or extent of said obligations; (ii) accept partial payment of said obligations; (iii) settle, release (by operation of law or otherwise), compound, compromise, collect or liquidate any of said obligations and the security or collateral therefore, if any, in any manner; or (iv) consent to the transfer of, or release from time to time, security or collateral, if any. No payment by a guarantor hereunder shall entitle the undersigned, by subrogation or otherwise, to any payment by Agent or out of the property of Agent except after the full payment and performance by Agent of all indebtedness, obligations and liabilities to WUNA.

No termination hereof shall be effected by the death of any or all of the undersigned. Each of the undersigned hereby waives notice of acceptance hereof and presentment, demand, protest and notice of nonpayment and any other demands and notices whatsoever. This guaranty shall bind the undersigned's respective heirs, administrators, personal representatives, successors and assigns, and shall inure to WUNA's successors and assigns. All of WUNA's rights are cumulative and not alternative. All capitalized terms used but not otherwise defined in this Personal Indemnity and Guaranty shall have the meanings given to such terms in the Agreement.

Permission and authorization is hereby granted to WUNA, as well as to prior employers, trade references, Dun and Bradstreet, banks, consumer credit services, consumer reporting agencies and to state and federal government representatives without regard to whether they are listed herein, permission and authorization to verify, receive, exchange and obtain business and/or personal credit and other information including without limitation criminal background checks as part of the application and approval process for Agent to become approved by WUNA to provide the Services, or at any time thereafter in connection with WUNA's ongoing evaluation of Agent or the undersigned and/or the collection of any obligation arising from the Agreement or the business relationship evidenced thereby, including this Personal Indemnity and Guaranty. Upon request by WUNA, each of the undersigned shall provide to WUNA his or her personal financial statement.

THE UNDERSIGNED HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO THIS PERSONAL INDEMNITY AND GUARANTY; THE UNDERSIGNED ALSO HEREBY IRREVOCABLY WAIVE PERSONAL SERVICE OF PROCESS AND CONSENT THAT SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED.

IN WITNESS WHEREOF, the undersigned have executed the foregoing Personal Indemnity and Guaranty.

Date: Aug 22, 2014

Guarantor Signature: *Ali Moghaddam*
Ali Moghaddam (Aug 22, 2014)

Name : Ali Moghaddam

Home Street Address: 619 Oakwood Ave NW

City, State, Zip: Huntsville, Alabama, 35811

Social Security No

ID No. 465228

C:\Windows\Temp\Aplfus-do5c6221-3c19-4595-a625-b6cd093a40d2.tmp

Application, Page 4 of 4

✅ Document Integrity Verified          EchoSign Transaction Number: XDB0KX368-172P5R